May it please the court. Good morning. I'm Thad Blank from the Federal Defenders. On behalf of Mr. Gomez, I'm going to attempt to save two minutes. We're asking the court to vacate Mr. Gomez's conviction at trial for second-degree murder. This is a trial where the jury was left wondering why Mr. Gomez pulled the trigger and killed his cousin and lifelong friend. Had the jury been properly instructed that the government bore the burden of proving the absence of the heat of passion or quarrel, there's a realistic possibility that the verdict would have been different. I want to focus on the error issue. That issue has a factual component, which is whether Mr. Gomez was entitled to a voluntary manslaughter instruction, and a legal component, which is whether the district court's instruction was correct. In other words, the factual component is probably the crux of this appeal. But in the context of the government's evidence in this case, the jury could rationally have found Mr. Gomez guilty of the lesser-included offense of voluntary manslaughter. I should remember this. Did the government ask for that instruction? Did you or the government ask for this instruction about heat of passion and so on? Or were we at plain error on this? Plain error. Yeah, that's what I thought. Okay. Yes. We asked for a voluntary manslaughter instruction, but not with the language that should have been given. Yeah. But the evidence that goes both to prejudice and the propriety of this instruction is, first, the defendant and the victim are relatives who have lived together on and off for most of their lives. They're friends who have an interaction earlier in the day, so obviously something very drastic has changed if Mr. Gomez is so antagonistic to Mr. Diaz that he shoots him in the head. Counsel, was it part of your defense that this was done in the heat of passion or as a sudden quarrel? Yes. Did you use those words? In closing argument, defense counsel used those words. Did he use the words heat of passion and sudden quarrel? I don't know that he used those exact words. Well, if he didn't use those exact words, I mean, if you use them at the very end of the case, it feels a little late to be saying, gee, this was just, you know, this is inexplicable. It was clearly heat of passion or something else. I mean, were you arguing diminished capacity? No. No alcohol-related, drug-related? I mean, there was evidence that the defendant was intoxicated, but we didn't ask for a diminished capacity instruction or anything like this. I should clarify, Judge Biby, are you asking whether we use those words when asking the district court judge for the instruction? No. Did you use those words in the course of the trial generally? I don't recall whether those exact words are used in closing argument. The reason I ask is because the voluntary manslaughter instruction that the district court gives suggests that the voluntary manslaughter would be the absence of malice of forethought, not necessarily the presence of sudden quarrel or heat of passion. Those might be reasons for it, but I'm wondering why the government would have to prove that. And if you haven't raised this as a defense, why should this have been plain error to the district court? I mean, why should we say, gee, district court, even though skilled counsel didn't ask for this, you should have recognized the problem? Well, what divides second-degree murder versus voluntary manslaughter is the absence or presence of the heat of passion. Well, it's the absence of malice of forethought. Yeah, but Lucina and Mulaney, these cases from the Supreme Court and then from this circuit, have explained that the history of the doctrine, the dividing line, turns upon the presence or absence of heat of passion and a quarrel. Then shouldn't that be a standard instruction? Well, it — I mean, shouldn't it be in the Ninth Circuit's model instructions? It is in the comment to the second-degree murder instruction. It, in fact, suggests — But it's not a part of our model instructions. It's part of the comment to it. It's attached to the instruction. It's in the packet that you look at. But not in the instruction. It's not the — no, it's the comment to the instruction. Right. But, I mean, it's from a case. It's from Quintero, and it's from Lucina, and it's right there if you read the entirety of the instruction, and it's common in the cases that it cites. So everybody just missed this. Why didn't the trial counsel ask for it? There's nothing in the record that explains why they didn't ask for it. Well, the record doesn't show any quarrel, though, right? As I read it, the witness says the cousin came over. There was some discussion. There was no argument between them. The defendant was aggravated about a high-speed chase that he'd been in the night before, not involving the cousin, and he was complaining about that. The victim and the witness went into another room, and then he shows up and says, I ought to shoot you. But no quarrel preceding that, if I read the record correctly. There's no direct evidence of a quarrel. No witness testifies that the two got in a fight. Was there an inference of a quarrel? There was an inference of a quarrel, and that's why the district court gave the instruction. What evidence supported that inference, that he was mad at the victim? Well, the district court, I think, gave the instruction. It's the little record that we have, because most of this was off of it, just based on Miss Uribe, the victim's statement, where the defendant, who has had a friendship with this person, is expressing all of a sudden antagonism and the need that he feels that it's appropriate to shoot him. But the other circumstances are, earlier in the day, they have an interaction where Mr. Diaz comes back and says he's upset, and it's unclear what it's about, something about a high-speed chase. But there's not. That's not having to do with the victim, though. Unclear. I mean, all that we know is that there's this third hand, Miss Uribe, reporting what Mr. Diaz said about what Mr. Gomez said, that he's very upset, he's drunk, something about a high-speed chase. Mr. Diaz feels the need to go to this house and have a follow-up conversation or whatever, confrontation with Mr. Diaz. And then it's relevant that they're both extremely intoxicated. Mr. Diaz is under a very high level of methamphetamine, and Mr. Gomez is very intoxicated, which a case like Arndt says that that makes it more plausible that there is some sort of quarrel that's irrational. These parties aren't acting rationally. But I'm having trouble in the absence of real evidence of heat of passion or real evidence of quarrel that it's plain error for the district judge to, not on his own, who said, you know, you've got to disprove it because there wasn't much there. There wasn't much there. But the key thing is it doesn't take much for a jury to rationally conclude that Mr. Gomez could have been guilty of the lesser included when there's very little evidence of malice itself. It's really the only testimony of malice, and the government is forthright in its closing argument. It's Miss Uribe's testimony about what she heard immediately before the shooting, and there's no explanation as to what occurred or why Mr. Diaz had that state of mind, why he felt that way. And Miss Uribe's chronology of the events of the day, I think it's fractured, not very credible. But, again, you know, the core of your argument is there was no malice of forethought. There's no malice of forethought. You must acquit our client. An alternate explanation, sort of the flip side of that is there was no malice of forethought. It was only heat of passion or it was sudden quarrel. But I don't see how Lucina helps you, because Lucina is quite explicit that the instruction was requested there and that we say that it must be given where the defense is raised. And since you haven't been using those terms during the course of the trial, I don't see that the defense has been raised. So I'm struggling to figure out where the plain error is. Well, Your Honor, it's requested. You're raising that issue just by requesting a lesser-included involuntary manslaughter. There's really no basis on which you can ask for it or get it unless you're suggesting that there's provocation or heat of passion. But you didn't use the words yourself. By you, I mean the trial counsel. He's talking about a struggle. He's talking about a quarrel. And what you're asking about is what the basis for the judge giving it was, and that's off the record. But the lie is Lucina, Mulaney, the text of the statute itself, what distinguishes voluntary from second degree is the existence of heat or passion or a quarrel. So even by submitting the proposed jury instructions, you're suggesting that that's an alternate basis. I mean, there's a number of things that could be besides those. All right? I mean, he could have been playing with a gun recklessly. He could have been doing a lot of things. They could have been playing Russian roulette. And those things would have gotten your client acquitted of second degree murder. Possibly convicted of involuntary manslaughter in the scenarios you're describing. The district court elected not to give that instruction because there wasn't any evidence of accidental conduct. So, I mean, the law defines voluntary manslaughter as the, you know, same as second degree murder, except there's that additional element. There's no malice before thought. Well, it's upon heat of passion or sudden quarrel. And Lucina says that, I mean, that's how it exists. I think a really good case that I want to point out for us is Cantero, which describes it's a case where voluntary manslaughter instruction is given. The defendant is playing. He's out in the yard with his two-year-old daughter and his four-year-old son. His two-year-old daughter dies. His theory is that she fell off the truck and hit his head. The government's theory is that he hit her several times. There's almost no evidence of motive why he did that, but the district court elected to give a voluntary manslaughter instruction because the government's theory was that he was angry at his daughter. And then the jury convicted on that. So there's sufficient evidence in that circumstance. It's comparable in terms of the lack of mens rea as here. Okay. We've taken you up to your limit. We'll give you a chance to respond. Thank you. Good morning, Your Honors. May it please the court. Serena Case Hargrove on behalf of the United States. Your Honors, no plain error occurred in this case. The court was correct to provide a lesser-included offense instruction. Under ARNT, a lesser-included offense instruction is required if there is indeed a lesser-included offense instruction. And everyone agrees here that voluntary manslaughter is that. And record evidence supports the lesser-included offense. In this case, the whole question was whether the government could prove malice aforethought. And the defense did an excellent job of highlighting one of the trickiest parts of this case for the government, and that was the total absence of a motive. These gentlemen were friends. They were cousins. And it was hard to explain why this murder had happened. And counsel consistently focused on that in the closing argument. Indeed, the defendant had acknowledged that he was guilty of voluntary manslaughter. And in the closing, defense counsel acknowledges that again on page 370 of the excerpts of record. So the only question was whether the government had introduced sufficient proof of malice aforethought. The district court was also correct that negating provocation was not required of the government in this case. And that's because there was no evidence of provocation whatsoever. In the defendant's brief, they cite to three pages in the excerpts, page 16, 241 and 354, arguing that the district court found evidence of provocation. But none of those pages established that, Your Honors. The first is part of the defendant's motion for a new trial, and the other two simply established that the court gave the lesser-included instruction for voluntary manslaughter. The defendant in his closing did argue that there was a struggle, and he based that on the testimony of Dr. Garrison, which interestingly was going over his negative findings. Dr. Garrison found that there was no evidence of a struggle. And defense counsel elicited from him the fact that it would be possible to have a struggle even with no physical evidence. And so he couldn't rule that out. That possibility turned into, in defense counsel's closing argument, a statement first that we don't know if they struggled, and then several pages later, a statement that Dr. Garrison's testimony strongly suggested that there was some kind of a struggle. Your Honors, a struggle does not amount to adequate provocation, and provocation simply wasn't a defense here. The absence of malice, a forethought, was the defense here, because there was no motive. And so the district court did not err by giving that lesser-included defense, and by not requiring the government to negate provocation. If there are no questions, Your Honors, I will cede my time. No questions. Thank you. We request affirmance. Thank you. Ms. Morris, would you put two minutes on the clock, please? Your Honors, I want to just point to the statute that underlies all of this, 18 U.S. Code 1112. And it says, Manslaughter is the unlawful killing of a human being without malice. It is of two kinds. Voluntary, upon a sudden quarrel or heat of passion. You can't ask for a lesser-included on voluntary manslaughter without raising the issue of sudden quarrel or heat of passion. And it's true that defense counsel, in closing, didn't use the words sudden quarrel, heat, or passion. He described a struggle. But the prosecutor understood him to be arguing passion or quarrel, because that's what he addressed in his rebuttal. And the judge's instruction, instruction 16, was a model instruction. And it does use the words sudden quarrel and heat of passion. What you wanted was something different that says the government's got to prove that it wasn't these things. That's right. That's right. And Lucina says that when that is raised, and it was raised in this case when defendants submitted that requested instruction to the judge, Lucina says that the jury has to be instructed that the government bears the burden of disproving sudden quarrel or heat of passion. The bottom line in this case is, with so little evidence of Mr. Gomez's state of mind, so little evidence of malice, a reasonable jury could have found that he was guilty of voluntary manslaughter, a killing in the context of a quarrel or heat of passion. And the judge properly instructed the jury, gave the instruction, but gave the wrong instruction. The verdict very possibly would have been different. You're actually, the plain error challenge that you're making is actually a challenge to our model instructions. It's a challenge to the instruction given in the context of this case. Which was the model instruction. Which was the model instruction. The plain error is because this violated Lucina. I mean, it's an on-point case that follows a Supreme Court case that is referenced in the comment to the model jury instruction that all of the parties looked at when they filed their proposed instructions and when the judge adopted it. If you're right about that, though, it seems that the additional language ought to be part of the instruction in every case. If you say that there's only two ways to negate malice, which, by the way, I'm not sure is correct. There are other ways that the defendant can negate malice, right? Not that I'm aware of. There's one case cited in the comments that is very different. Diminished capacity negates malice, right? What capacity? Diminished capacity could negate malice. There is, I think that's correct. I'm not certain, but I think that's correct based on the case. So the reason that this is in the commentary rather than the instruction itself is that it really depends on what the circumstances of the case are. And it's incumbent upon the lawyer requesting this additional language to say there are circumstances here that justify the giving of this additional language in the instruction. That's where I'm hung up because I don't see circumstances that trial counsel pointed to. Well, the first part of your question, Your Honor, the voluntary manslaughter, the pattern instruction would be appropriate in a case where the government just charges voluntary manslaughter as opposed to when it's used as a lesser included for a second-degree murder charge. But the Mulaney, Licina, all these cases emphasize that really the key dividing line between second-degree and murder, except maybe in some ancillary circumstances, is this existence or absence of heat of passion. Counsel, why isn't the burden satisfied with Instruction 15, which is the murder instruction? Because if you're correct that heat of passion and sudden quarrel, that's not negate the malice of forethought, then hasn't the government proved that it was not heat of passion and sudden quarrel? Because it did prove that it was malice of forethought, and that's what the jury concluded. That's an argument that Licina rejects. Licina is very, very short, Counsel. It really didn't go into much of this. Well, the instructions given in Licina are very similar to the instructions given in this case. And the instruction requested was — I don't think — I think in Licina that was the only thing charged, wasn't it? I'd have to check, but I — No, there was a second-degree murder. There was. It started as a second-degree charge. Both — and a voluntary manslaughter and an involuntary manslaughter instruction. Yes. Malaney — or Licina says, We construe Malaney to require jury instructions for murder to state that the government bears the burden of proving beyond a reasonable doubt the absence of heat of passion or sudden quarrel where that defense is raised. It was raised in this case through the request for the instruction, the argument that was made, and if it had been given, that probably would have been the verdict in this case. So we ask you to vacate the conviction. Thank you. Thank you. Thank both sides for their arguments. The United States v. Gomez submitted for decision. The next case this morning, United States v. Kim.
judges: W. Fletcher, Bybee, Burns